UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| MATTHEW McNEARNEY, | ) | Case No. EDCV 10-1814 PJW |
| | ) | |
| Plaintiff, | ) | |
| | ) | MEMORANDUM OPINION AND ORDER |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of the | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

I.   INTRODUCTION

Plaintiff appeals the decision of Defendant Social Security Administration ("the Agency"), denying his application for Supplemental Security Income ("SSI").  He claims that the Administrative Law Judge ("ALJ") erred when he rejected the opinions of the examining and reviewing psychiatrists and when he relied exclusively on the Medical-Vocational Guidelines (hereinafter the "Grids") to conclude that Plaintiff was disabled.  For the reasons explained below, the Court concludes that the ALJ erred and remands the case to the Agency for further proceedings.

II.   SUMMARY OF PROCEEDINGS

Plaintiff applied for SSI on June 19, 2008, alleging that he had been unable to work since June 6, 2008, because he suffered from bipolar disorder. (Administrative Record ("AR") 96-99, 122-27.) The Agency denied his application initially and on reconsideration. (AR 42-43, 47-58.) He then requested and was granted a hearing before an ALJ. (AR 61, 69-74.) Plaintiff appeared with counsel and testified at the hearing. (AR 21-41.) The ALJ subsequently issued a decision denying benefits. (AR 9-16.) Plaintiff appealed to the Appeals Council, which denied review. (AR 1-5.) He then commenced the instant action in this court.

III.   ANALYSIS

A.   The ALJ's Rejection of the Examining Psychiatrist's Opinion

Plaintiff contends that the ALJ improperly rejected the opinion of the examining psychiatrist. (Joint Stip. at 3-17.) For the following reasons, the Court agrees.

An ALJ must provide clear and convincing reasons for rejecting an uncontradicted opinion of an examining doctor. *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995). Where the examining doctor's opinion is contradicted, the ALJ must provide specific and legitimate reasons backed by substantial evidence for discounting it. *Id.*

Psychiatrist John S. Woodard examined Plaintiff at the behest of the Agency and concluded that Plaintiff suffered from bipolar disorder and would be somewhat limited in his ability to function in the workplace. (AR 197-200.) For example, Dr. Woodard believed that Plaintiff would be moderately limited in his ability to interact with the public and to complete a workweek. (AR 199.) He also believed that Plaintiff was slightly to moderately limited in his ability to

2

1    interact with supervisors and co-workers.  (AR 199.)  Still, Dr.

2    Woodard thought that Plaintiff was capable of performing simple,

3    repetitive tasks.  (AR 199.)

4        The ALJ concluded that Plaintiff had the residual functional

5    capacity to perform simple, repetitive tasks equating to unskilled

6    work.  (AR 13.)  Applying the Grids, he determined that Plaintiff was

7    not disabled.  (AR 15.)

8        Plaintiff alleges that the ALJ erred when he "silent[ly]

9    disregard[ed]" Dr. Woodard's opinion that Plaintiff suffered from

10   psychiatric impairments that interfered with his ability to work.

11   (Joint Stip. at 5.)  The Agency disagrees.  It argues that Plaintiff

12   has simply misunderstood what the ALJ did.  In the Agency's view, the

13   ALJ did not reject Dr. Woodard's opinion at all, rather, he

14   translated Dr. Woodard's medical findings into a residual functional

15   capacity finding.  (Joint Stip. at 10.)

16       The Court rejects both arguments.  The ALJ did not accept Dr.

17   Woodard's findings and there was nothing quiet about the way that he

18   rejected them.  He wrote, "I find [Dr. Woodard's] assessment to be

19   not supported by the evidence of record as a whole to the extent that

20   it indicates an inability to sustain simple, repetitive tasks

21   equating to unskilled work."  (AR 14.)  Thus, in the Court's view,

22   there is nothing mysterious about what the ALJ did.  The issues that

23   remain are whether the ALJ erred in rejecting Dr. Woodard's findings

24   and, if so, whether the error was harmless.  This analysis turns on

25   whether Dr. Woodard's opinion was contradicted by another treating or

26   examining doctor, since it is within this context that the ALJ's

27   decision is assessed.  *See Lester*, 81 F.3d at 830-31.  The Court

28   finds that Dr. Woodard's opinion was not contradicted by a treating

1    or examining doctor's opinion.  As such, for the ALJ to reject it, he

2    had to provide clear and convincing reasons for doing so.  *Id.* at

3    830.

4         The ALJ relied on two reasons for rejecting Dr. Woodard's

5    findings.  First, he noted that the treating sources did not allege

6    greater limitations.  (AR 14.)  Second, he pointed out that none of

7    the treating sources had found that Plaintiff was disabled.  (AR 14.)

8    For the reasons explained below, the Court finds that these reasons

9    are not enough to uphold the ALJ's decision.

10        As to the ALJ's finding that the treating sources had not found

11   greater limitations, the Court would agree that this is true.  None

12   of the doctors or psychologists who interacted with Plaintiff in a

13   treating capacity found that he was limited beyond what the ALJ

14   found.  Though the treating psychologist who interviewed Plaintiff in

15   April 2008 when he sought psychiatric care at the San Bernardino

16   County Department of Behavioral Health found that Plaintiff's Global

17   Assessment of Functioning was 50 (AR 190)--meaning that he was

18   seriously impaired in occupational functioning, *see Diagnostic and*

19   *Statistical Manual of Mental Disorders*, 4th ed. (revised) at 34--she

20   never opined that Plaintiff's limitations were greater than those

21   assessed by the ALJ.  Then again, she was never asked to opine about

22   Plaintiff's limitations or to assess what his limitations were.  Her

23   role was merely to treat Plaintiff.  And the chart notes that she

24   filled out when she was treating him do not give any insight into

25   what she perceived his functional capacity was.  Thus, though the

26   Court would agree that the treating physicians did not find that

27   Plaintiff was more limited than the ALJ found, that fact is not a

28   clear and convincing reason for rejecting Dr. Woodard's opinion in

1  this case because it does not appear that any of the doctors were

2  ever asked their opinion about his limitations and none of them

3  offered an opinion on their own.

4      As to the ALJ's second reason, i.e., that none of the treating

5  sources found that Plaintiff was disabled, the same findings and

6  analysis hold true.  It appears that the first time that Plaintiff

7  sought psychiatric help was in April 2008.  None of the doctors or

8  social workers who treated him at that time opined that he was

9  disabled.  But, here, too, none of them were asked that question.

10 In fact, Plaintiff was purportedly living in a tent and not working.

11 Thus, it does not appear that occupational issues were at the

12 forefront of the doctors' minds.  Further, even if the doctors had

13 been asked and had offered an opinion on disability, it is unclear

14 how much weight the ALJ would have or should have given such an

15 opinion since, as the Agency routinely points out to this Court, a

16 doctor's opinion that a claimant is disabled is entitled to little or

17 no weight because disability determinations are solely the province

18 of the ALJ.  *See, e.g., Tonapetyan v. Halter*, 242 F.3d 1144, 1148

19 (9th Cir. 2001) (noting treating physician's opinion that claimant is

20 disabled is not binding on the ALJ); Social Security Ruling 96-5p

21 (explaining doctors' opinions regarding ultimate issue of disability

22 "can never be entitled to controlling weight or given special

23 significance"); 20 C.F.R. §§ 416.927(e)(1) (noting disability

24 determinations are reserved to the Agency) and 416.927(e)(3)

25 (explaining Agency does not give "any special significance" to a

26 doctor's opinion on issues reserved to the Agency, i.e., disability

27 determinations).

28

1    In the end, the Court concludes that the ALJ's two reasons for

2    rejecting Dr. Woodard's opinion are not clear and convincing.  As

3    such, the ALJ's rejection of Dr. Woodard's opinion was in error.  *See*

4    *Lester*, 81 F.3d at 830-31.  And the Court concludes that the error

5    was not harmless since it appears that, had the ALJ accepted Dr.

6    Woodard's opinion that Plaintiff was moderately impaired in his

7    ability to complete a workweek and slightly to moderately impaired in

8    his ability to work with supervisors and co-workers, he would have

9    found Plaintiff much more limited than he found.  *See Stout v.*

10   *Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006)

11   (holding error that affects ultimate disability determination is not

12   harmless).[1]

13   Plaintiff asks the Court to simply accept Dr. Woodard's opinion

14   as true and remand the case to the Agency with instructions to

15   proceed to step five of the sequential evaluation process.  (Joint

16   Stip. at 8.)  The Court declines to do so.  Though it has found that

17   the ALJ cited insufficient reasons for discounting Dr. Woodard's

18   opinion, it does not find that Dr. Woodard's opinion should

19   necessarily be controlling here.  That decision will be left to the

20   ALJ in the first instance.  To begin with, as the ALJ noted in

21   rejecting Plaintiff's credibility, Plaintiff lied to Dr. Woodard and

22   told him that he had never used illegal drugs.  (AR 14.)  In fact,

23   Plaintiff had abused methamphetamine in the past and it is unclear,

24   apparently even to Plaintiff, when he stopped abusing it.  (AR 184.)

25

26

27        [1]   Even were the Court to apply the standard reserved for
     opinions that are contradicted by another doctor's opinion, i.e.,
     specific and legitimate reasons, *see Lester*, 81 F.3d at 830-31, the
28   Court would still conclude that the ALJ erred here.

Though he told one staff member at the County facility that he had stopped using it 15 years earlier (AR 186), four months later, he told another at the same facility that he stopped using it 18 months before. (AR 184.) The fact that he withheld his methamphetamine use from Dr. Woodard certainly calls into question Dr. Woodard's opinions regarding Plaintiff's limitations. The ALJ found that Plaintiff was not credible, a finding Plaintiff does not challenge here, and that calls Dr. Woodard's findings into question since they were based almost exclusively, it appears, on what Plaintiff told him. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) ("An ALJ may reject a treating physician's opinion if it is based to a large extent on a claimant's self-reports that have been properly discounted as incredible." (internal quotation marks omitted)). For these reasons, on remand, the ALJ will be free to assess this case as he sees fit and can accept Dr. Woodard's findings, reject them, or accept some and reject others.

B.   The ALJ's Rejection of Portions of the Reviewing Psychiatrist's Opinion

The reviewing psychiatrist, Dr. Amado, determined that Plaintiff was moderately limited in his ability to complete a normal workday and workweek; understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods of time; interact appropriately with the general public; and respond appropriately to changes in the work setting. (AR 201-02.) Dr. Amado also determined that Plaintiff had moderate limitations in activities of daily living, maintaining social functioning, and maintaining concentration, persistence, and pace. (AR 212.) But Dr. Amado believed that, despite these limitations, Plaintiff could

perform unskilled work in a low-stress, non-public setting.  (AR
214.)  The ALJ purportedly accepted Dr. Amado's opinion regarding
Plaintiff's limitations, with the exception of the limitations
relating to social functioning, and found that the Grids directed a
finding of not disabled.  (AR 14-15.)

Plaintiff complains that the ALJ failed to take Dr. Amado's
findings into account in assessing whether Plaintiff could work.
(Joint Stip. at 14-15.)  Here, again, the Agency disagrees.  It
argues that the ALJ adopted Dr. Amado's findings--including the
finding that, despite Plaintiff's limitations, he could perform
unskilled, low-stress work in a non-public setting--in concluding
that Plaintiff could work.  (Joint Stip. at 15.)

Dr. Amado's finding that Plaintiff was moderately limited in
concentration, persistence, and pace is inconsistent with a finding
that he can perform simple, repetitive tasks.  *See Peck v. Astrue*,
2010 WL 3790597, at *13-14 (N.D. Cal. Sept. 27, 2010) (holding
ability to perform "simple, repetitive tasks equating to unskilled
work" was inconsistent with finding of moderate limitations in
concentration, persistence, and pace).  As a result, the Court tends
to side with Plaintiff on this issue and orders remand to allow the
ALJ to fully address the impact of Dr. Amado's findings on
Plaintiff's ability to work.

C.   The Residual Functional Capacity Assessment and the ALJ's Use of
     the Grids

Plaintiff contends that the ALJ erred in finding that Plaintiff
had the residual functional capacity to work and in utilizing the
Grids to support this finding.  In Plaintiff's view, his non-
exertional limitations precluded the ALJ from relying exclusively on

8

1    the Grids and required the testimony of a vocational expert.  (Joint
2    Stip. at 6-8, 17-19.)  For the reasons explained below, the ALJ will
3    have to reconsider these issues on remand.

4         The issue of Plaintiff's residual functional capacity is
5    dependent on the ALJ's interpretation of the medical evidence.   In
6    light of the fact that the Court has remanded the case to the Agency
7    for further consideration of the medical evidence, the Court need not
8    address the ALJ's residual functional capacity finding at this time.
9    The ALJ will necessarily be required to reconsider that finding on
10   remand.

11        As to the use of the Grids, again, that will be dependent on the
12   ALJ's determination of Plaintiff's residual functional capacity.
13   Should the ALJ determine that Plaintiff's non-exertional limitations
14   preclude the use of the Grids, he will have to consult a vocational
15   expert.  Plaintiff's claim here, however--that the doctors' opinions
16   of moderate limitations in various functions preclude the use of the
17   Grids--is not supported by controlling precedent.  *See, e.g., Hoopai*
18   *v. Astrue*, 499 F.3d 1071, 1077 (9th Cir. 2007) (upholding ALJ's use
19   of the Grids where claimant was moderately limited in his ability to
20   maintain attention and concentration for extended periods; perform
21   activities within a schedule, maintain regular attendance, and be
22   punctual with customary tolerance; complete a normal workday and
23   workweek without interruption; and perform at a consistent pace
24   without an unreasonable number and length of rest periods).

25        Finally, Plaintiff requests that the Court remand the case to
26   the Agency with an order to award benefits.  This request is denied.
27   It is not clear to the Court from the record before it that Plaintiff
28   is, in fact, disabled.  Further proceedings are necessary to flesh

this out.  *See Harman v. Apfel*, 211 F.3d 1172, 1180-81 (9th Cir.

2000) (holding remand for further proceedings was appropriate where

the record contained additional unanswered questions regarding the

applicant's eligibility for benefits).

                        IV.   CONCLUSION

     For these reasons, the Agency's decision is reversed and the

case is remanded for further proceedings consistent with this

Opinion.

     IT IS SO ORDERED.

     DATED: October 7, 2011.

                              _____
                              PATRICK J. WALSH
                              United States Magistrate Judge